IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GONZÁLEZ, | ) | Case No. 2:14-CV-02053-JO |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | OPINION AND ORDER |
| COLETTE PETERS,<br>Director of Oregon<br>Department of Corrections, | ) ) ) ) ) | |
| Defendant. | ) ) | |

JONES, J:

      Plaintiff Christopher González, acting pro se, sued Defendant Colette Peters, Director of the Oregon Department of Corrections ("ODOC"), requesting declaratory relief, injunctive relief, and reimbursement of filing fees incurred pursuant to 42 U.S.C. § 1983. (# 2 p. 6). González alleges that Peters violated his First Amendment rights by imposing a policy restricting personal reading materials for inmates housed in the Intensive Management Unit ("IMU"). Specifically, González challenges OAR 291-055-0020(2)(a) and (b), a regulation prohibiting inmates from possessing personal reading materials until their behavior warrants a promotion to a less restrictive level of the IMU, contending the regulation is facially unconstitutional. Peters filed this motion for summary judgment (#27). For the following reasons, I grant Peters' motion.

1 Opinion and Order

## BACKGROUND

González, an inmate in the custody of the ODOC, is housed in the IMU at program level two. (#36 p. 2). The IMU segregates inmates who engage in misconduct that threatens the safe, secure, and orderly operation of the institution. Prisoners' behaviors that warrant IMU segregation include threatening or inflicting bodily injury on another person, posing an immediate risk of escape, promoting threatening group activities, or participating in other activities that significantly threaten the safe and secure operation of the facility. OAR 291-055-0019(1); OAR 291-055-0010(6)(a)-(e).

The IMU consists of five program levels. The lower program levels impose progressively increased restrictions on inmates' personal possessions. OAR 291-055-0020. When the ODOC assigns an inmate to the IMU, the inmate begins at level two, the second most restrictive program level. (#27). The IMU Inmate Program Committee evaluates each inmate's conduct to determine whether the inmate deserves a promotion to a higher, less restrictive program level. (#28 p. 3). IMU program levels one and two restrict inmates' reading materials to legal, religious, and educational materials, personal correspondence, and up to three paperback books checked out on a scheduled exchange basis from the prison library. OAR 291-055-0020(1)(a), (b). The regulation excludes personal reading materials from the list of permitted items.

González argues that Peters violated his First Amendment rights by depriving him of personal reading materials while housed in the IMU. In his complaint, González alleges that OAR 291-055-0020(2)(a) and (b) is unconstitutional on its face because the policy deprives him of his First Amendment right to read. (#2 p. 6). In her motion for summary judgement, Peters argues:

(1) González cannot mount a facial challenge to ODOC's rules;

(2) ODOC's rules pass constitutional muster under the First Amendment;

(3) The Prison Litigation Reform Act ("PLRA") bars González's claim for overbroad injunctive relief.

## STANDARD OF REVIEW

The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge*, 865 F.2d 1539, 1542 (9th Cir. 1989). The substantive law governing a claim determines whether a fact is material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); see also *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *T.W. Elec. Service*, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *T.W. Elec. Service*, 809 F.2d at 630-31.

## DISCUSSION

### I. Facial Challenge of Oregon Administrative Rules

Under the First Amendment, a party prevails on a facial challenge only if the party proves "a substantial number of [the statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *U.S. v. Stevens*, 559 U.S. 460, 461 (2010). *See also Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008)

3 Opinion and Order

(stating that a law impeding on First Amendment rights is facially invalid only if a substantial number of its applications are unconstitutional). A party can make this showing by asserting factual instances in which the application of the law is unconstitutional. *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988). Courts disfavor facial challenges because of the likelihood of "premature interpretations of statutes in areas where their constitutional application might be cloudy." *United States v. Raines*, 362 U.S. 17, 22 (1960).

González does not assert any unconstitutional applications of OAR 291-055-0020(a) and (b). Instead, González argues that OARs are not laws and thus restrictions on facial challenges do not apply. (#35 p. 14). This argument fails because administrative rules have the same effect as legislative enactments.[1] González fails put forth any facts showing a substantial number of instances in which the ODOC cannot apply OAR 291-055-0020(a) and (b) constitutionally. Therefore, González's facial challenge fails as a matter of law.[2]

Although González does not prevail in his facial challenge, I analyze whether OAR 291-005-0020(a) and (b) pass constitutional muster under the First Amendment. I do this to give González, a pro se litigant, full review of the merits of his case.

## II. First Amendment Claims

The First Amendment protects an individual's right to read. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) (emphasizing the general principle that the government may not dictate what individuals read, speak, or hear). Further, "[p]rison walls do not form a barrier

---

[1] The Ninth Circuit stated when Federal courts interpret Oregon State law, "our role is to 'interpret the law as would the [Oregon] Supreme Court.'" *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010) (citing *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004)). The Oregon Supreme Court stated, "[a]dministrative rules and regulations are to be regarded as legislative enactments having the same effect as if enacted by the legislature as part of the original statute." *Bronson v. Moonen*, 270 Or. 469, 528 (1974).

[2] González brings a facial challenge to OAR 291-055-0020(a) and (b) because an "as applied" challenge is unavailable to him. Liability under 42 U.S.C. § 1983 must be based on personal involvement by the defendant. *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980). González only brought action against Peters who is not responsible for applying the restriction on González's personal reading materials. Therefore, Peters is not liable due to her lack of personal involvement.

separating prison inmates from the protections of the Constitution." *Morrison v. Hall*, 261 F.3d 896, 900 (9th Cir. 2001). However, in some instances, the Constitution permits greater restriction of rights in a prison environment compared to other environments. *Beard v. Banks*, 548 U.S. 521, 528 (2006). For example, a prisoner does not retain First Amendment rights that are inconsistent with the legitimate penological objectives of a prison. *Pell v. Procunier*, 417 U.S. 817, 822 (1974). If a prison regulation reasonably relates to legitimate penological interests, there is no violation of the First Amendment and thus no genuine issue for trial. *May v. Baldwin*, 109 F.3d 557, 560 (9th Cir. 1997). To determine whether a prison regulation reasonably relates to legitimate penological interests, the Supreme Court sets out four factors:

> (1) whether a valid, rational connection exists between the regulation and the stated legitimate government interest;
>
> (2) whether inmates retain an alternative means of exercising the right;
>
> (3) the impact the requested accommodation will have on inmates, the prison staff, and prison resources generally; and,
>
> (4) whether there is an absence of ready alternative methods of accommodating the prisoner. *Turner v. Safley*, 482 U.S 78, 89-91 (1987).

The *Turner* factors present a balancing test with the first factor the most significant. *Ashker v. Cal. Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). When determining the reasonableness of a prison regulation, the Court must "accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

### A. Rational Connection to Prison's Legitimate Interests

Improving inmate behavior constitutes a legitimate penological interest, and providing behavioral incentives establishes a valid basis for withholding personal reading materials. *Beard v. Banks*, 548 U.S. 521, 530 (2006). The state does not bear the burden to prove the validity of the prison regulation. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Rather, the prisoner must put forth evidence to disprove the regulation's validity. *Overton*, 539 U.S. at 132. If the prisoner presents sufficient evidence to refute a rationale connection between the regulation as applied and the penological interest, then the government must present enough counter-evidence to show that the connection is not "so remote as to render the policy arbitrary or irrational." *Mauro v. Arpaio*, 188 F.3d 1054, 1060 (9th Cir. 1999).

González does not submit any reports, prison memorandum, factual findings, or other external documents as evidence, but rather relies on his own personal experience. He states that almost every inmate he witnessed complete the IMU program eventually returned to the IMU. (#36 p. 3). Specifically, González contends that inmates engage in the same disruptive behavior that results in a return to the IMU even after ODOC restricted their personal reading materials during their initial placement in the IMU. (#36 p. 3). González asserts that this fact establishes that there is no logical connection between the challenged deprivations and the penological interest of improved prisoner behavior.

In *Walker v. Sumner*, 917 F.2d 383 (9th Cir. 1990), the Nevada Department of Prisons ("DOP") implemented a directive that required all inmates to submit to a blood withdrawal, contending the blood withdrawal contributed to the safety of prisoners and staff. When Walker refused, the DOP used physical force to draw his blood. *Walker*, 917 F.2d at 384. This incident caused Walker to file a 42 U.S.C. § 1983 action alleging a violation of his constitutional rights.

The Ninth Circuit found that the Walker proffered sufficient evidence to refute a connection between the blood withdrawal and its purported penological interest when he stated, based on personal experience, that the prison screened inmates for AIDS at intake and thus additional screening by the prison did not relate to legitimate penological interest of security. *Walker*, 917 F.2d at 387. Similarly, González presents sufficient evidence, based on his own personal experience, to refute a connection between inmate behavior improvement and a restriction on personal reading materials. Therefore, the burden shifts to Peters to present enough counter-evidence to show that the connection is not so remote as to render the policy arbitrary or irrational. *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999).

The evidence Peter's puts forth is in the form of an affidavit from Captain Jost, a Correctional Captain of the ODOC with 17 years of experience. (#28). Captain Jost's affidavit states that the restriction on personal reading materials improves inmate behavior (#28 p. 5). Captain Jost states that ODOC designed the IMU to be an uncomfortable living situation that encourages inmates to avoid committing offenses that will result in the ODOC placing the inmate in the IMU. (#28 p. 5). Captain Jost believes that the restriction on personal reading materials fosters discipline and order for the inmates both in and out of the IMU. (#28 p. 5). Capitan Jost identified the rational connection between restricting an inmate's personal possessions and motivating an inmate to take measures to avoid this restrictive living environment. Peters echoes Jost's sentiments contending that the primary justification for limiting personal property in the IMU is to provide incentive for better inmate behavior. (#27 p. 9).

This evidence, taken together, shows the connection between the jail's policy of prohibiting personal reading materials in the most restrictive levels of the IMU and the

penological interest of improving inmate behavior. *See Beard*, 548 U.S. at 531-32 (holding that a restriction on newspapers, magazines, and photos rationally related to the penological interest of behavior improvement in part because a prison official stated that the restriction served the identified function). Further, courts must afford deference to prison officials to avoid "hampering their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Ashker v. California Dep't of Corr.*, 350 F.3d 917, 922 (9th Cir. 2003). The need of a prison to motivate better behavior of particularly difficult inmates constitutes a valid penological interest. *Beard*, 548 U.S. at 530.

I find that the restriction of personal reading materials for inmates in the IMU rationally connects to the penological interest of improving inmate behavior. Under the circumstances, this connection is not "so remote as to render the policy arbitrary or irrational." Turner, 482 U.S. at 89-90 (1987). Therefore, the first *Turner* factor weighs in favor of Peters.

### B. Alternative Means of Exercising the Right

Peters argues that inmates retain an alternative means of exercising their rights because she permits inmates to read up to three library books on a scheduled exchange basis, personal correspondence, and religious, educational and legal materials. (# 27 p. 10). González contends that these alternatives fail to provide a means of exercising his First Amendment right because reading religious books, legal work, and personal correspondence does not replace personal reading materials and the ODOC library only possesses a limited selection of damaged books. (# 35 p. 11).

The First Amendment protects inmates' right to read but it does not provide inmates' the right to read any material they wish. *Bahrampour v. Lampert*, 356 F.3d 969, 976 (9th Cir. 2004); *Frost*, 197 F.3d at 357. In *Turner*, the regulation at issue prohibited inmate-to-inmate

correspondence. *Turner*, 482 U.S. at 81-82. Although prison officials prohibited this type of correspondence, the prison permitted inmates to correspond with non-inmates. *Turner*, 482 U.S. at 81-82. The Court found that the regulation "does not deprive prisoners of all means of expression. Rather, it bars communication only with a limited class of other people . . . ." *Turner*, 482 U.S. at 92. Similarly, although the ODOC restricts González's right to read personal materials, González may still access other reading materials. Peters restricts only a limited class of reading materials in this case.

The record establishes that even with the restriction on personal reading materials, that González may still read up to three library books on a scheduled exchange basis, personal correspondence, and religious, educational and legal materials. (# 27 p. 10). Therefore, Peters affords González his protected First Amendment rights through alternative means. Accordingly, the second *Turner* factor also favors Peters.

### C. Effect of Accommodation on Prison Administration

Peters argues that if inmates possess personal reading materials in the IMU, inmates will use the reading material to engage in destructive behavior such as clogging toilets, starting fires, and covering cell windows, which will require additional preventive security measures. (# 27 p. 10). González argues that Peters already permits inmates to possess materials that can cause the complained of destructive behavior in the IMU, therefore Peters' concern is unwarranted. (# 35 p. 35).

The Court defers to prison officials regarding these accommodations because even minor accommodations affect prison administration. *Turner*, 482 U.S. at 90. If a prisons' regulation prevents only a small portion of the behavior it sets out to eliminate, a strong inference exists that the regulation is an exaggerated response. *Mann v. Smith*, 796 F.2d 79, 82 (5th Cir. 1986). Inmates in the IMU may already engage in the complained of destructive behavior with the

materials available to them. Because the regulation at issue fails to prevent inmates from engaging in destructive behavior using permitted reading materials, there is a strong inference that this regulation is an exaggerated response in the context of effect on prison administration. Therefore, adding personal reading materials to the personal effects inmates may possess will not require the additional security measures Peters alleges. Because Peters does not assert a legitimate concern regarding the effect of the accommodation on prison administration, the third *Turner* factor favors González.

### D. Absence of Ready Alternatives

Peters argues that inmates retain few privileges to restrict and thus there are no ready alternatives. (# 27 p.11). González does not address ready alternatives in his response. If an inmate presents an alternative that "fully accommodates the prisoner's rights at *de minimis* cost to the valid penological interest," the alternative is evidence that the regulation does not satisfy the rational connection requirement. *Turner*, 482 U.S. at 91. Under the *Turner* analysis, the burden to prove a ready alternative remains on the González. *Overton*, 539 U.S. at 132. In *Overton*, the Court acknowledged that high security inmates possess "few other privileges to lose" thus courts should defer to the discretion of prison officials. *Overton*, 539 U.S. at 134. Here, González presents no alternatives that possess a *de minimis* cost to the valid penological interest of Peters. Accordingly, the fourth *Turner* factor favors Peters.

### E. Conclusion

The *Turner* factors indicate whether a prison regulation rationally relates to a prison's legitimate penological interests. *Turner*, 482 U.S. at 89. In summary, factors one, two, and four favor Peters. Although factor three favors González, this only provides some evidence that the regulation is unreasonable and is not conclusive of the overall reasonable relationship between the restriction and the legitimate penological interests. *Beard*, 548 U.S. at 532 (2006).

10 Opinion and Order

Ultimately, the balance tips in favor of a rational relation between OAR 291-055-0020(a) and (b) and the valid penological interest of behavior improvement. Prison regulations that rationally relate to legitimate penological interests do not violate an inmate's First Amendment rights. *Pell*, 417 U.S. at 822. Thus, OAR 291-055-0020(a) and (b) pass constitutional muster and do not infringe on González's First Amendment rights.

### III. Overbroad Injunctive Relief

Peters argues that González's request for injunctive relief does not comport with the requirements of the Prison Litigation Reform Act because the request is too broad. González argues that his request for injunctive relief is sufficiently narrow because Peters may still restrict personal reading materials if inmates abuse these reading materials. Because I grant Peters motion for summary judgement, I do not reach the question of the scope of González's requested injunctive relief.

### CONCLUSION

The district court should grant summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case, both parties agree to all the material facts. Peters proves that she is entitled to judgment as a matter of law because González's facial challenge cannot prevail and OAR 291-055-0020(a) and (b) pass constitutional muster. For all the foregoing reasons, I grant Peters' motion for summary judgement (#27). I deny any remaining pending motions as moot.

IT IS SO ORDERED

DATED this 28th day of April, 2016.

Robert E. Jones
United States District Judge